# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMES ARTHUR STARKS | : CIVIL ACTION |
|---|---|
| v. | : |
|  | : NO. 16-6062 |
| CAROLYN W. COLVIN | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                                             **September 12, 2017**

      James Arthur Starks asks we review the Social Security Commissioner's denial of his application for Supplemental Security Income ("SSI") benefits. An administrative law judge evaluated the evidence and, in detailed findings, denied Mr. Starks's appeal of the Commissioner's ruling. After the Appeals Council also denied his appeal, Mr. Starks properly sought our review of the administrative law judge's decision and now raises four good faith arguments for reversing the administrative law judge's decision and awarding him benefits. But after careful review of the record and mindful of our limited scope of review, we find substantial evidence for each of the administrative law judge's detailed findings requiring we deny Mr. Starks's petition for review in the accompanying Order.

## I. Background

      Sixty-three year-old James Starks earned a high school education.[1] He worked as a groundskeeper, security guard, automobile detailer, salvage laborer, meat packer, and cleaner/housekeeper.[2] He has not sought employment since 2011.[3] He claims he is unable to work because of his physical condition.[4] Mr. Starks's medical history includes pneumonia in 2000 followed by a chest tube insertion.[5] He sought care for recurrent pain in the chest and rib area surrounding the chest tube insertion.[6] Mr. Starks sought care for a left leg injury on April 5,

2012. He has an intramedullary rod in his left tibia with an interlocking screw as a result of a tibia fracture.[7] Mr. Starks suffers from osteoarthritis of his left ankle diagnosed in 2012.[8]

Mr. Starks filed for SSI benefits on February 7, 2013 alleging disability as of March 1, 2010.[9] Following a hearing, Administrative Law Judge ("ALJ") Linda Thomasson denied Mr. Starks's claim on March 20, 2015.[10] The ALJ applied the required five-step analysis[11] to find Mr. Starks "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the 20 CFR Part 404, Subpart P, Appendix 1."[12] She found Mr. Starks has osteoarthritis of the left ankle and is capable of performing medium work under 20 CFR 416.967(c).[13] The ALJ determined Mr. Starks is limited to: (1) frequent operation of foot controls with his left lower extremity, (2) frequent climbing of stairs, ramps, scaffolds, and ladders, and (3) frequent kneeling, balancing, and crouching.[14] The ALJ found Mr. Starks able to perform his past relevant work, even with the limitations.[15]

The ALJ afforded limited weight to the opinions of Mr. Starks's treating physician Won Myung Kim, M.D. and determined the objective medical evidence did not support Mr. Starks's claims he is required to use a cane. The ALJ found Mr. Starks's residual functional capacity allows him to perform medium work as defined in 20 CFR 416.967(c) and he can perform past relevant work as a meat wrapper, groundskeeper, cleaner/housekeeper, salvage laborer, and automobile detailer.[16]

## II. Analysis

Mr. Starks timely filed a request for review.[17] As later explained in his brief, Mr. Starks objects to Administrative Law Judge Thomasson's finding: (1) his treating physician's opinions warranted limited weight; (2) his use of a cane is not medically necessary; (3) the hypothetical presented to the vocational expert accurately portrayed his medically established limitations; and,

2

(4) his ability to perform medium work. We overrule Mr. Starks's objections and affirm the Commissioner's findings based on substantial evidence.

Judicial review of ALJ Thomasson's March 20, 2015 decision is deferential; we are bound by her findings of fact if they are supported by substantial evidence in the record.[18] Our review is limited to determining whether substantial evidence supports the ALJ's decision[19] and whether the ALJ applied the proper legal standards in reaching the decision.[20] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21] Substantial evidence consists of "more than a mere scintilla, but less than a preponderance of the evidence."[22] When reviewing the ALJ's decision, we must rely on the record presented at the administrative proceedings and the pleadings.[23] When we find the ALJ's factual findings are supported by substantial evidence and determined through application of the appropriate legal standards, we are "bound by them, 'even if [we] would have decided the factual inquiry differently.'"[24]

### A. Judge Thomasson properly afforded limited weight to Mr. Starks's treating physician's opinion.

Mr. Starks objects to ALJ Thomasson's decision to afford limited weight to his treating physician Dr. Kim's opinions. Mr. Starks argues Dr. Kim's opinions should be given controlling weight and there is no contrary medical evidence in the record. Mr. Starks argues the ALJ improperly rejected Dr. Kim's April 7, 2014 ("April Questionnaire") and November 19, 2014 ("November Questionnaire") Impairment Questionnaires opining Mr. Starks is limited in his ability to sit, stand, walk, carry, and lift as is required of his past relevant employment. We disagree.

An individual is disabled if they cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

3

last for a continuous period of not less than 12 months."[25] A treating physician's opinion may be provided controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[26] The treating physician's opinion may conclusively establish the validity of an individual's symptoms "absent persuasive contradictory evidence."[27] The ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."[28] An ALJ may choose to accept the opinion of a non-treating, non-examining physician over the opinion of a treating physician so long as she does not disregard the findings of the treating physician's opinion and there is medical evidence in the record contradicting the treating physician's opinion.[29]

Judge Thomasson provided legitimate reasons for assigning limited weight to the opinions of Dr. Kim. The ALJ accepted the diagnosis of osteoarthritis to Mr. Starks's left ankle.[30] The ALJ found the record did not support Dr. Kim's opinion regarding Mr. Starks's physical limitations.[31] In the April Questionnaire, Dr. Kim detailed Mr. Starks's diagnoses as "chronic left leg pain due to old tibia, fibula fracture" and "chronic right chest pain due to lung injury dyspnea on execution."[32] Dr. Kim opined Mr. Starks "would likely be off-task 70%"[33] of the time and such diagnoses limited Mr. Starks to:

- sitting a total of one hour in an eight-hour workday;
- standing a total of thirty minutes in an eight-hour workday;
- walking a total of one half hour in an eight-hour workday;
- lifting/carrying less than five pounds both occasionally and frequently; and
- refrain from climbing, balancing, squatting, kneeling, crouching, crawling, bending, twisting, or stooping.[34]

Although Dr. Kim relied on a chest x-ray and CT scan, ALJ Thomasson found Dr. Kim failed to demonstrate how these tests supported the limitations.[35] The ALJ also found Dr. Kim

4

failed "to identify how the referenced chest CT and chest x-ray could support the findings related to the claimant's pain and that there are no medication side effects yet."[36] Reviewing the November Questionnaire, ALJ Thomasson found Dr. Kim indicated Mr. Starks's pain was not controlled by medications and his projected time off-task was reduced from 70% to 50%.[37]

ALJ Thomasson found an inconsistency in Dr. Kim's treatment records. On the November Questionnaire, Dr. Kim noted Mr. Starks began treatment on December 9, 2011.[38] On the April Questionnaire, Dr. Kim noted "1995" as the date of first treatment.[39] The ALJ found "[t]his inconsistency alone undermines the persuasiveness of the opinion."[40]

The ALJ found the objective medical evidence presented in the record does not support Dr. Kim's opinions. With regard to Mr. Starks's chest pain, he received an electrocardiogram on April 15, 2010, indicating sinus bradycardia.[41] A subsequent physical examination conducted on August 24, 2011 indicated no remarkable cardiovascular or respiratory conditions.[42] A July 21, 2011 electrocardiogram indicated borderline findings.[43] As a patient at Albert Einstein Medical Center from June 23 to June 24, 2012, Mr. Starks received another electrocardiogram, which showed a non-specific T-wave abnormality when compared to the electrocardiogram he received on July 21, 2011.[44] A radiograph performed on his chest during his stay at Albert Einstein indicated no active cardiopulmonary disease consistent with the image obtained on February 1, 2012.[45]

ALJ Thomasson found similar inconsistencies between the objective medical evidence and Dr. Kim's opinions regarding Mr. Starks's leg and knee. Radiographs of Mr. Starks's left knee on July 21, 2011 showed no acute abnormalities in the knee.[46] A second radiograph taken on the same date indicated no acute fracture or complications related to the tibial intramedullary rod and proximal interlocking screws located in his leg.[47] On August 24, 2011, Mr. Starks

5

presented to Albert Einstein Emergency Department with a complaint of left knee pain and the doctors performed a physical examination.[48] The musculoskeletal findings recorded by the doctors during the examination do not support Mr. Starks's claimed disabilities.[49]

On January 18, 2012, Yogesh Gavil, M.D., an Albert Einstein physician, examined Mr. Starks.[50] Mr. Starks did not complain of symptoms and Dr. Gavil's findings did not support Mr. Starks's claims.[51] An April 5, 2012 radiology report of Mr. Starks's left tibia/fibula indicated a healed tibia fracture as well as a fracture of the proximal fibula without any change in position or alignment, which is consistent with the July 21, 2011 radiograph of his leg.[52] Radiographs taken of his left knee on the same day show the joint intact, consistent with the July 21, 2011 study.[53] The ALJ noted since February 2012, Mr. Starks periodically received intercostal nerve blocks, but found no objective evidence indicating ineffective injections.[54]

Based on her detailed review of the objective medical evidence, ALJ Thomasson found Dr. Kim's opinions unsupported by the record and afforded them limited weight. We find substantial evidence to support the ALJ's findings relating to the weight given to medical evidence and Dr. Kim's opinions as treating physician.

### B. Judge Thomasson did not err in finding Mr. Starks's use of a cane not medically necessary.

Mr. Starks objects to the ALJ Thomasson's exclusion of a cane use requirement in his residual functional capacity assessment. Mr. Starks claims he must use a cane to walk. He relies on Dr. Kim's May 13, 2013 treatment note he "now requires using walking cane [with] difficulty walking"[55] and Dr. Oberoi's September 24, 2013 observation of Mr. Starks's cane use.[56]

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."[57] In *Howze v. Barnhart*, our

6

court of appeals reviewed a reference by the appellant's treating physician to a "script" for a cane, a report with a box for "hand-held assistive device medically required for ambulation" checked off by appellant's treating physician, and multiple references to the appellant's use of a cane.[58] The court of appeals held this evidence is insufficient to support the appellant's allegations of his cane's medical necessity and the ALJ is not required to address the cane use.[59] Mere mention of a claimant's cane use is not enough as "isolated notations are 'insufficient to support a finding that the [claimant's] cane was medically necessary.'"[60]

Judge Thomasson found "[t]here is no evidence to support the claimant's allegation that he uses a doctor-prescribed cane."[61] Evidence of Mr. Starks's cane use is limited to Dr. Kim's May 13, 2013 treatment note[62] and Dr. Oberoi's September 24, 2013 observation of Mr. Starks's cane use.[63] No further information "establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed" as required by Social Security Ruling 96–9p is present.[64] There is no prescription for a cane or any indication why a cane is needed to aid Mr. Starks's walking. We cannot infer Mr. Starks's medical need for a cane based on his history of osteoarthritis in the ankle and past tibia-fibula surgery. We find this adduced evidence insufficient and ALJ Thomasson did not err in omitting a cane requirement from the residual functional capacity assessment.

### C. Judge Thomasson's hypothetical to the vocational expert accurately portrayed medically established limitations.

Mr. Starks objects to the ALJ's hypothetical question posed to the vocational expert because she omitted Dr. Kim's opinions on limitations or cane use from the hypothetical. Mr. Starks argues the incomplete hypotheticals did not represent his inability to work.

When an ALJ poses a hypothetical question to an expert which does not address "all of a claimant's impairments that are supported by the record[,]…it cannot be considered substantial

evidence."[65] While an ALJ can "proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments."[66] But, in presenting a hypothetical, an ALJ need not submit to the vocational expert "every impairment *alleged* by a claimant."[67] Rather, "the hypotheticals posed must 'accurately portray' the claimants impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'"[68] When considering "all impairments," the ALJ is required to address "only those that are medically established."[69] "The ALJ must accurately convey to the vocational expert all of the claimant's *credibly established limitations*."[70] When a "medically supported and otherwise uncontroverted in the record" limitation is not included in the hypothetical question posed to the expert, reliance on the expert's response is precluded.[71] "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'"[72]

Judge Thomasson found "the claimant able to perform his past relevant work as he actually performed it and as generally performed in the national economy."[73] ALJ Thomasson did not err when she afforded limited weight to Dr. Kim's opinions of Mr. Starks's limitations or find the necessity of Mr. Starks's cane use not credibly established. The ALJ provided reasons based on the evidence in the record in rejecting Dr. Kim's opinions.[74] On review of the record, the ALJ posed a hypothetical addressing cane use.[75] But the ALJ did not err in finding the evidence insufficient to establish Mr. Starks's cane use as a medical necessity.

Even if Mr. Starks does rely on a cane for walking (as he and his doctors allege)[76] the

8

hypothetical addressed by the vocational expert indicates he is not necessarily precluded from employment. The ALJ asked, "Assuming the claimant necessitated a cane for ambulation, would that preclude the jobs that you listed at the light level of exertion or the medium?" The vocational expert responded, "I think I would definitely rule out the medium exertional level. At the light [level of work] it would depend if they could do all the carrying in one hand. If they could, then yes" and clarified the individual would need to be able to lift up to twenty pounds.[77] Mr. Starks relies on Dr. Kim's opinions in the Impairment Questionnaires to support his claim he cannot lift objects over a certain weight. The ALJ found the objective medical evidence in the record does not support Mr. Starks's physical limitations as opined by Dr. Kim and afforded Dr. Kim's opinions in the Questionnaires limited weight.

Judge Thomasson is not required to incorporate Dr. Kim's opinions of Mr. Starks's limitations or Mr. Starks's cane use into the hypothetical presented to the vocational expert.

### D. Judge Thomasson did not err in finding Mr. Starks's ability to perform medium work.

Mr. Starks objects to ALJ Thomasson's finding he had the ability to perform medium work and return to his past relevant work with a medium residual functional capacity. Mr. Starks claims he is incapable of performing more than sedentary work, cannot return to his past relevant work, and should have been found disabled under the Medical Vocational Guidelines.[78]

ALJ Thomasson's findings are based on substantial evidence in the record. She found the record does not support Mr. Starks's claims he is unable to perform more than sedentary work. Dr. Kim's opinions in the April and November Questionnaires support Mr. Starks's claimed physical limitations. The ALJ addressed her reasons for providing limited weight to Dr. Kim's opinions and cited evidence contradicting Mr. Starks's alleged limitations. ALJ Thomasson found the objective medical evidence did not support Mr. Starks's claims of

9

disability under the Medical Vocational Guidelines.

Judge Thomasson did not err in finding Mr. Starks able to perform medium work and return to his past relevant work.

## III. Conclusion

In the accompanying Order, we affirm Judge Thomasson's March 20, 2015 decision denying Mr. Starks's application for Supplemental Security Income. Our review is not whether we, in balancing the evidence, would arrive at the same decision. We only decide whether Judge Thomasson's findings are based on competent evidence after considering and describing the weight afforded to the evidence submitted to her. We find Judge Thomasson did not err in finding (1) Dr. Kim's opinions warranted limited weight, (2) the evidence does not support medically necessary cane use, (3) the hypothetical accurately portrayed Mr. Starks's medically established limitations, and (4) Mr. Starks is able to perform medium work.

---

[1] ECF Doc. No. 8, Record of Proceedings ("R.") at 37, 158 (Ex. 2E, p. 3).

[2] R. at 26, 56-60, 74.

[3] R. at 44.

[4] R. at 45.

[5] R. at 246.

[6] R. at 246.

[7] R. at 314-315, 354-55.

[8] R. at 227.

[9] R. at 133.

[10] R. at 15-26.

[11] An ALJ determines if a claimant: (1) is currently engaged in substantial gainful employment; (2) has a severe "medically determinable" physical or mental impairment; (3) the impairments meet or equal the criteria listed in the Social Security Regulations and mandate a finding of disability; (4) has a residual functional capacity to perform work with the limitations and can return to past relevant work; and (5) can adjust to other existing work in the economy. *See* 20 C.F.R § 416.920(a)(4)(i)-(v).

[12] R. at 22.

[13] R. at 26.

[14] R. at 22.

[15] R. at 26.

[16] R. at 25-26.

[17] ECF Doc. No. 3. Mr. Starks appealed Judge Thomasson's decision to the Appeals Council. The Appeals Council denied his appeal.

[18] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)(citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[19] *Harftranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)(citing 42 U.S.C. § 405(g)).

[20] *Trinh v. Astrue*, 900 F.Supp.2d 515, 518 (E.D.Pa. 2012)(citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[21] *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also* 42 U.S.C. § 405(g); *Gross v. Comm'r. Soc. Sec.*, 2016 WL 3553259, at *3 (3d Cir. June 30, 2016); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

[22] *Trinh*, 900 F.Supp.2d at 518 (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 3d Cir. 1988)). *See also Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938).

[23] *Trinh*, 900 F.Supp.2d at 518; *See also* 42 U.S.C. § 405(g).

[24] *Trinh*, 900 F.Supp.2d at 518 (citing *Fargnoli*, 247 F.3d at 38).

[25] 20 C.F.R. § 416.905; *See also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

[26] 20 C.F.R. § 404.1527(c)(2).

[27] *Smith v. Sullivan*, 720 F.Supp. 62, 64 (E.D. Pa. 1989).

[28] *Plummer*, 186 F.3d at 429 (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

[29] *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011)(citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

[30] R. at 21.

[31] R. at 25.

[32] R. at 25, 400.

[33] R. at 25, 404.

[34] R. at 25, 402.

[35] R. at 25, 400.

[36] R. at 25.

[37] R. at 25, 462, 465.

[38] R. at 461.

[39] R. at 400.

[40] R. at 25.

[41] R. at 24, 290-91.

[42] R. at 24, 277.

[43] R. at 24, 324-26.

[44] R. at 24, 200-19.

[45] R. at 24, 215.

[46] R. at 25, 329.

[47] R. at 25, 327.

[48] R. at 24, 277.

[49] R. at 24, 277.

[50] R. at 24, 339-40, 358-59.

[51] R. at 24, 339-40, 358-59.

[52] R. at 24, 355.

[53] R. at 24, 354-355.

[54] R. at 24, 389.

[55] R. at 384.

[56] R. at 396.

[57] Social Security Ruling 96–9p, 61 Fed.Reg. 34482 (July 2, 1996).

[58] *Id.*

[59] *Id.*

[60] *Rivera v. Astrue*, 2009 WL 235353, *5 (E.D. Pa. 2009)(citing *Howze*, 53 Fed.Appx. at 222).

[61] R. at 24.

[62] R. at 384.

[63] R. at 396.

[64] Social Security Ruling 96–9p, 61 Fed.Reg. 34482 (July 2, 1996).

[65] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004)(citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).

[66] *Burns v. Barnh*, 312 F.3d 113, 123 (3d Cir. 2002)(citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

[67] *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

[68] *Id.*

[69] *Id.*

[70] *Rutherford*, 399 F.3d at 554 (citing *Plummer*, 186 F.3d at 431).

[71] *Rutherford*, 399 F.3d at 554.

[72] *Id.* at 554.

[^73]: R. at 26.

[^74]: R. at 25.

[^75]: Judge Thomasson asked the vocational expert:

> Q: Just to clarify. So, if someone had to ambulate with a cane, but they were able with their hand not using the cane to lift and carry up to 20 pounds, they could perform the past work that you identified for the light hypotheticals?
> A: Past relevant work, no—
> Q: Okay.
> A: -- because you can't work as a housekeeper while you're walking and working with only one hand, especially if you're dealing with inspection, you know, you're standing there.
> Q: Is there any past work a person could do with the light -- let me just --
> A: With a cane at the light?
> Q: Um-hum. All right. So –
> A: I'm going to say no.
> Q: Okay.
> A: That would rule out the security guard and the cleaner housekeeper.
> Q: Okay. So, with the hypothetical at light with the postural that I had given before and I can repeat any of this, you had given jobs -- I'm sorry, the assembler electrical accessories, small products assembler and inspector. Would any of those be able to be performed with a cane?
> A: I'm going to clarify my answer.
> Q: Okay.
> A: If a cane was just needed for ambulation, but not for standing then my answer would remain.
> Q: Okay.
> A: But if a cane is needed while standing and performing the work then it would essentially become a one-handed job and no, they would not be able to perform it because they would not be able to keep up with productivity expectations. Thank you for allowing me to clarify that. And my answer in response to both of those questions would be based on professional experience because the DOT does not address the use of a cane or whether work could be performed with one hand or both hands. So, my answer in response to both of those cane related questions is based on professional experience and performing onsite job analysis, labor market research and job placement.
> Q: So, just to make sure I understand here, so you said if a cane is used for ambulating a person can do light work, but not if it's used for balance while standing, is that correct?
> A: Correct.
> Q: So, with respect to hypothetical two, if I were to say that a person needed to use a cane for ambulation, but not standing and included all the other limitations I had for the hypothetical two, would the person be able to do those other job examples that you gave me for that hypothetical?
> A: Yes. They could do all the lifting and carrying with one hand while walking. Yes. And again that would be based -- that answer is based on professional experience, not

14

from the DOT because the DOT does not address the use of a cane.

R. at 66-68.

[76] R. at 384, 396.

[77] R. at 65.

[78] 20 C.F.R. § 404, Subpt. P, App. 2.